Date signed December 22, 2015



UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

```
IN RE:                          :
                                :
LINDA E. FARWELL,               :    Case No. 14-10126
                                :       (Chapter 11)
          Debtor                :    Not for publication in West's
                                :    Bankruptcy Reporter.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

MEMORANDUM DECISION AND ORDER
DENYING MOTION FOR STAY PENDING APPEAL

The debtor has moved for a stay pending the appeal of this court's *Order Terminating Automatic Stay (Real Property at 15712 Jones Lane, Gaithersburg, Maryland 20878)* (Dkt. No. 141), entered in favor of MTGLQ Investors, LP, Movant (Rushmore Loan Management Services, LLC, Servicer) ("MTGLQ"). That order granted relief from the automatic stay of 11 U.S.C. § 362(a) to permit MTGLQ to proceed to foreclose upon the debtor's real property on Jones Lane, property that the debtor concedes lacks equity. The motion for a stay pending appeal must be denied.

I

Granting a stay pending appeal is "always an extraordinary remedy," *Bhd. of Railway & Steamship Clerks v. Nat'l Mediation*

*Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966), and the moving party carries a heavy burden to demonstrate that the stay is warranted, *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). This follows because, as stated in *Nken v. Holder*, 556 U.S. 418, 427 (2009):

> A stay is an "intrusion into the ordinary processes of administration and judicial review," *Virginia Petroleum Jobbers Assn. v. Federal Power Comm'n*, 259 F.2d 921, 925 (C.A.D.C.1958) (per curiam ), and accordingly "is not a matter of right, even if irreparable injury might otherwise result to the appellant," *Virginian R. Co. v. United States*, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463 (1926). The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders that the legislature has made final.

II

I next address the standard for a stay pending appeal.

A.

In exercising its discretion in deciding whether to grant a stay pending appeal, a court considers:

> four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Nken*, 556 U.S. at 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34. The first two of these factors "are the most critical," and "[i]t is not enough

that the chance of success on the merits be 'better than negligible.'" *Nken,* 556 U.S. at 434 (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)).  More than a mere "possibililty" of relief is required.  *Id.*  At a minimum, the appellant must show that there is a substantial case for relief on the merits. *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012).  Similarly, more than a mere "possibility" of irreparable harm to the movant must be shown.  *Nken*, 556 U.S. at 434-35.

B.

MTGLQ contends that *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008), sets forth the applicable standard for a stay pending appeal in this case.  I need not decide whether *Winter* applies.

*Winter* addressed the standards for granting a preliminary injunction, not a stay pending appeal.  For the following reasons, arguably what is at stake here *is* an injunction pending appeal.  The automatic stay of 11 U.S.C. § 362(a) merely preserved the status quo until the bankruptcy court could decide whether the stay should be terminated under 11 U.S.C. § 362(d). The bankruptcy court granted relief from the automatic stay under 11 U.S.C. § 362(d)(2) because the debtor failed to demonstrate, as was her burden under 11 U.S.C. § 362(g), that the property (in which the debtor concedes there is no equity) was necessary for an effective reorganization.  In other words, the debtor failed to demonstrate that MTGLQ should remain enjoined from conducting

3

a foreclosure sale.  Granting the motion for a stay would enjoin MTGLQ from conducting a foreclosure sale by undoing the termination of the automatic stay that the debtor was required to show should remain in place.

However, it does not matter whether *Winter* or *Nken* applies. First, MTGLQ does not need to rely on *Winter* if, *arguendo*, the *Winter* test for obtaining a preliminary injunction could be viewed as more difficult to meet than the *Nken* test for obtaining a stay pending appeal: under the standards set forth in *Nken*, the requested stay pending appeal must be denied.

Second, *Winter*'s standards for a preliminary injunction are practically identical to those for a stay pending appeal.  Under *Winter*, 555 U.S. at 20:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

(Citations omitted.)  Many courts view a stay pending appeal and an injunction pending appeal as governed by the same standard. *See, e.g.*, *McCammon v. United States*, 584 F. Supp. 2d 193, 196 (D.D.C. 2008) ("motions for an injunction pending appeal are governed by the same standard as motions for stay pending appeal").  Indeed, *Nken* adopted as applicable to a motion for a stay pending appeal *Winter*'s view that more than a mere "possibililty" of relief is required to obtain a preliminary

injunction.[1]

### III

Considering the factors set forth in *Nken*, the debtor is clearly not entitled to a stay pending appeal.

#### A.

As to the first factor of whether there is a likelihood of success pending appeal, the debtor has no possibility of prevailing on appeal. The appeal is frivolous.

Under 11 U.S.C. § 362(d)(2), the bankruptcy court was required to grant relief from the automatic stay:

> with respect to a stay of an act against property under subsection (a) of this section, if--
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization[.]

The bankruptcy court correctly determined that it was required to grant relief from the automatic stay pursuant to that provision.

A party seeking to lift the stay "has the burden of proof on

---

[1] *But see, e.g., Respect Maine PAC v. McKee*, 562 U.S. 996 (2010):

> Such a request [to a reviewing court for an injunction pending review] "demands a significantly higher justification" than a request for a stay, because unlike a stay, an injunction "does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313, 107 S.Ct. 682, 93 L.Ed.2d 692 (1986) (Scalia, J., in chambers).

5

the issue of the debtor's equity in the property." 11 U.S.C. § 362(g)(1); however, the debtor has "the burden of proof on all other issues." 11 U.S.C. § 362(g)(2). Here, there was no dispute that the debtor does not have any equity in the property at issue within the meaning of § 362(d)(2)(A). At the hearing, MTGLQ's claim stood at $997,521.33, close to a million dollars, and far in excess of the value of the property as evidenced by the debtor's attempt to have the court value the property as worth $285,000.00. Accordingly, relief from the stay was necessary unless the debtor showed under § 362(d)(2)(B) that the property is necessary for an effective reorganization, as the burden in that regard is on the debtor. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988).

Under the standard set by the Supreme Court in *Timbers,* to establish that the property is necessary for an effective reorganization under § 362(d)(2)(B), a debtor is required to show that "the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be a reasonable possibility of a successful reorganization within a reasonable time." 484 U.S. at 376 (citations and internal quotations omitted). Here, there is no possibility of a confirmed plan when MTGLQ desires to proceed with a foreclosure sale instead of dealing with the debtor via a reorganization plan. As discussed below, if MTGLQ, as it has made clear, will vote its unsecured claim in favor of rejection of any plan, it

6

will be impossible for the debtor to obtain a confirmed plan because the debtor will be unable to comply with the absolute priority rule embodied in 11 U.S.C. § 1129(b)(2)(B)(ii).

The debtor plainly is unable to pay the entire $997,521.33 owed to MTGLQ. For that reason, she has sought under 11 U.S.C. § 506(a) to bifurcate MTGLQ's claim into a secured claim for the alleged $285,000 value of its collateral and an unsecured claim for the balance of the $921,2039.50 amount owed on the claim as of the petition date. That unsecured claim will doom any plan. Whatever the value of the collateral may be (ranging from the value the debtor asserts to the value MTGLQ asserts), the debtor cannot attain a confirmed plan in the face of MTGLQ's obvious opposition to a plan being confirmed. For this reason, the debtor's complaint regarding the delay in obtaining a hearing to value the collateral is meaningless.

Unless MTGLQ made an election under 11 U.S.C. § 1111(b) (an election it would not make because it would prevent it from blocking confirmation of a plan), MTGLQ would be entitled to cast a vote on the plan with respect to the unsecured portion of its claim. Under 11 U.S.C. § 1126(c), with an exception of no relevance here, a plan is not accepted by a class when the plan is rejected by creditors "that hold at least two-thirds in amount . . . of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." The unsecured claims in the case, other than MTGLQ's unsecured claim, total

7

$13,396.37.[2]  Even if MTGLQ's unsecured claim were placed in the same class as those claims, the plan would be rejected by the class under § 1126(c) if MTGLQ voted its unsecured claim against confirmation because the amount of its unsecured claim dwarfs the aggregate $13,396.37 amount of those other unsecured claims.[3]

Because the class containing MTGLQ's unsecured claim would be a rejecting class, a plan could not be confirmed.  This is because of the so-called absolute priority rule under which a plan that allows a debtor to retain property cannot be "crammed

---

[2]  Those other unsecured claims in the case consist of:

- an $825 claim owed Capitol One (allowed pursuant to the debtor's scheduling of that claim on the debtor's Schedule F (Dkt. No. 23));

- a $417.88 claim owed pursuant to a judgment (scheduled on the debtor's amended Schedule D (Dkt. No. 40);

- a $5,000 second mortgage debt (scheduled on the debtor's amended Schedule D (Dkt. No. 40));

- a $6,379.62 claim filed by CACH, LLC; and

- a $773.87 claim filed by Portfolio Recovery Associates, LLC.

[3]  This was conceded at the hearing:

THE COURT:  Let me ask you a question before we get there.  What are the claims in this case?  We are going to have a huge deficiency claim on the part of the secured Creditor.  And they [MTGLQ] are indicating they are unhappy with the case.  They are not going to vote in favor of the plan.  They are going to swamp the class of unsecured Creditors, aren't they?

MR. GOTTRON: Oh,  absolutely, Your Honor.

Transcript of hearing of Oct. 5, 2015 (Dkt. No. 149) at 28.

down" when a class of unsecured claims has rejected the plan if the creditors in that class will not be paid in full. *In re Maharaj*, 681 F.3d 558, 562 (4th Cir. 2012). The absolute priority rule is embodied in 11 U.S.C. § 1129(b)(2)(B)(ii), which requires with respect to a rejecting class of unsecured claims that:

> the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section[.]

*In re Maharaj* adopted the "narrow view" of the amendments made in 2015 to § 1129(b)(2)(B)(ii), namely, that the provision's reference to § 1115 only has "the effect of allowing individual Chapter 11 debtors to retain property and earnings acquired after the commencement of the case that would otherwise be excluded under § 541(a)(6) & (7)," 681 F.3d at 563 (footnote omitted), and did not abrogate the absolute priority rule with respect to a debtor who is an individual. In other words, the absolute priority rule remains in place under this provision with respect to a property if, as is the case here, that property was in existence on the petition date.

The debtor's argument regarding the possibility that a plan could be confirmed despite the absolute priority rule is this:

Debtor was prepared to submit a Plan in which she would

9

>have re-amortized the secured portion of her loan such
>that the present value of the stream of payments made
>would have equaled or exceeded the fair market value of
>her Jones Lane property.  It was anticipated that MTGLQ
>would have exercised a Section 1111(b) election due to
>the significantly higher loan balance versus the said
>present value of the stream of payments anticipated; in
>which case it would have lost its right to vote against
>Debtor's Plan.

*Debtor's Reply to the Response to Emergency Motion to Stay Filed by MTGLQ Investors, LP* (Dkt. No. 156) at 4.  However, MTGLQ could not be forced to make a § 1111(b) election, and its intention is to be allowed to proceed with a foreclosure sale instead.

In addition, beyond the absolute priority rule there is another reason why relief from the automatic stay was required under § 362(d)(2).  Even if the debtor were to succeed in having the court value the collateral at $285,000, the debtor did not show a reasonable possibility of obtaining a confirmed plan because she failed to show a reasonable possibility that she would be able to afford to make the payments necessary to satisfy the requirements under § 1129(b)(2)(A) regarding the treatment of an allowed secured claim of $285,000.  The debtor has not presented any convincing argument that the bankruptcy court committed plain error in its findings in that regard.

The debtor also urges that she could make adequate protection payments, but lack of adequate protection is an issue when relief is granted under § 362(d)(1), not when relief is granted under § 362(d)(2).  The standards for stay relief under

10

§ 362(d)(1) and § 362(d)(2) are independent and alternative. *Can–\*Alta Props., Ltd. v. States Sav. Mortg. Co. (In re Can–\*Alta Props., Ltd.)*, 87 B.R. 89, 90 (B.A.P. 9th Cir. 1988). Therefore, an offer of adequate protection payments was irrelevant to whether stay relief should have been granted under § 362(d)(2). *See In re Ripon Self Storage, LLC*, 2011 WL 3300087, Nos. EL10-1325-HKiD, EL-10-1326-HKiD, 10-27215, at \*5 (B.A.P. 9th Cir. Apr. 1, 2011).

### B.

As to the second factor to be considered in addressing a motion for a stay pending appeal, the debtor has not shown that she will be irreparably injured absent a stay. The property is an investment property that is worth far less than the debt owed MTGLQ. She will lose nothing of value if the property goes to foreclosure. She will lose the opportunity to attempt to advance a plan dealing with the property, but, as shown above, there is no possibility of her obtaining a confirmed plan.

### C.

The first two factors, as already noted, are the most critical factors, and they alone would warrant denying a stay pending appeal. The third factor, the existence of substantial harm to MTGLQ as the party opposing a stay pending appeal, also weighs in favor of denying a stay pending appeal. This bankruptcy case has been pending since January 5, 2014, and the

automatic stay has prevented MTGLQ from exercising its foreclosure remedy under nonbankruptcy law for that entire time. Staying the court's order lifting the stay and thereby delaying the exercise of the foreclosure remedy until an appeal is decided would deprive MTGLQ of the rights it bargained for under nonbankruptcy law when there is no chance of a successful appeal and no bankruptcy reason to delay the exercise of those rights. Upon conducting a foreclosure sale, MTGLQ would be free to invest the proceeds of that sale, and obtain a return on the investment of those proceeds. Staying the foreclosure sale would mean a delay in MTGLQ's having proceeds of its collateral upon which it could earn a return. Staying the order lifting the automatic stay would also mean that the scheduled sale would be cancelled, and if the appeal is unsuccessful, MTGLQ would later have to restart the noticing required by Maryland law, thereby engendering even further delay. There is no reason to attempt to fashion a supersedeas bond requirement to protect MTGLQ when it is so plain that the appeal is doomed to fail.

D.

The final factor to consider is the public interest. The public interest weighs in favor of denying a stay pending appeal when there demonstrably is no valid basis under the Bankruptcy Code to continue staying MTGLQ's right to proceed with a foreclosure sale. MTGLQ has gone without receiving mortgage payments for a long time. It is time to put an end to the

debtor's delaying MTGLQ's legitimate rights under nonbankruptcy law.

## IV

In accordance with the foregoing, it is

ORDERED that the debtor's motion for a stay pending appeal is DENIED.

[Signed and dated above.]

cc:   E-recipients of notice of orders.

END OF ORDER